We'll hear ACLU versus U.S. Department of Defense. Good afternoon, Your Honors. May it please the court, Benjamin Torrance, Assistant United States Attorney for the Southern District of New York on behalf of the Department of Defense. When the Secretary of Defense issued his certification in this court, that triggered the Protected National Securities Documents Act, and once that certification issued, stating, merely stating his determination of that danger, there is to be no disclosure under the Freedom of Information Act and no proceedings under the Freedom of Information Act. Congress was very clear in its intent. They wanted to allow the Secretary of Defense alone to determine whether to withhold these photographs, and they wanted to end this very lawsuit. And you can see that intent from the text of the statute, the deferential language that says that the Secretary will issue a certification, which alone implies that it's his determination to make. Does it say solely in his discretion? It does not say, it does not use the word discretion. It doesn't use the word solely, but it does set up a standard for him to employ with regard to his certification, doesn't it? It says the criteria are whether there will be danger in his determination. There will be danger to Americans, service members, and civilians abroad. Okay. Uh, but that, but it, it provides no other criteria than that. So he couldn't do it if he just thought this would make the United States look bad. That's correct. He has to, he has to adhere to these. And how are we to know that he, that he decided it on the ground, that it, that, uh, the photograph would endanger citizens in the United States? Well, because he said so, is a simple answer. And that combined with the presumption. Does he have to say it or does he just have to say that it complies with the standard? He says in the certification that it, that it would. And then he lists the criteria that he has to state. Uh, and having said that, that satisfies the statute that alone would do it, but that combined with this courts and the Supreme court's presumption that an agency, when it acts, acts regularly and acts with honesty, uh, those things combined suffice to make the statute, uh, excuse me, to make the certification sufficient. If he doesn't make this certification, say there are a hundred documents or a hundred photographs and he makes it as to 50, what then happens to the other 50? The other 50. And, and that in fact did happen in this case, there were 198. Right. Uh, so he, uh, so those, those were released and that, that, why would they be released? They were released because in the judgment of the department of defense, uh, they would not cause that danger. Would they be released because there's no exemption for them under FOIA? I don't know that we want to quite, I mean, I suppose we'd be the authority for the release absent FOIA. Well, I don't know that. I think the presumption goes the other way. I don't think we need authority to release things. I think we need authority to withhold them. The, the, even without FOIA, the photographs by themselves are covered by FOIA, but they're removed from FOIA because of the certification. Yes. And how is that no different than any other exempt document under FOIA? Well, the, the differences between, um, there are a couple of answers to that. One is that in our view, the PNSDA does not, uh, it, it removes the documents from the scope of FOIA altogether. Uh, and so that removes the presumption of disclosure that applies under FOIA. It removes the judicial review under the Denova. But absent the certification, there's no presumption against FOIA. That's correct. They clearly meet the FOIA's definition of agency records. And, and so they've been litigated since 2004 in the district court, precisely for that reason. They are records under FOIA. Absent this particular statute, they would be subject to FOIA. We, we certainly agree with that. How does it, I'm sorry, go ahead. So the certification is what removes them from FOIA. The certification removes them from FOIA. Yes. And as I was saying, Congress's intent to do exactly that is clear, uh, from the text that, that gives the secretary that authority that says he only has to state this, that he has, he is the one given the authority to make this determination, uh, it's clear from the language of the statute that says these documents will not be subject to FOIA, will not be subject to FOIA disclosure, will not be subject to FOIA proceedings. And all of that is not withstanding any other provision of law, which is generally the language Congress uses when it means to, uh, preclude the application of any other provision of law. Uh, so on the face of the statute alone, it shows that deference to the secretary. What would you, um, what, what would your position be, um, if the, um, if the record of a judicial proceeding, uh, showed that the, um, that the secretary had not looked at the documents, um, and had not, and had in fact not done anything, none had done none of the things, the mental things that, that are called for to make such a certification, if he'd simply signed a piece of paper, um, uh, that was a certification, but had not in fact made a determination based on looking at the photographs and so forth. I don't, I think the district court was correct to say the secretary does not personally have to review the documents. Uh, the secretary, both by operation. No, but I mean, I'm, I'm postulating, I'm sorry. I'd be more that, that, that nobody had looked at the documents. Um, if nobody looked at it, we, we, again, let's say that there was a record that showed, uh, that showed, uh, a memo from one person to another saying, if these things are released, it'll look bad. And, um, um, uh, politically it wouldn't be good for the president or something like that. Um, so, uh, sign whatever it is that the statute calls for, sign the certification. Right there. There is, you know, we, we do say that generally this is not a reviewable determination, but even in the context of unreviewable determinations, there is law from this court and the Supreme court that says when an agency acts in such bad faith or so completely outside the scope of the statute, it's acting ultra-virus and, and that, that can, that would not be within the statute. Our position of course, is that what the secretary did was within the statute. It's his determination. It's his decision to decide what goes, what, what photographs fall within the terms of the statute. Uh, and so we don't have anything even close to that. Um, but if, you know, if we did have something that were so outrageously outside that it could be described as not covered by the PNSDA, you know, that's a spreadsheet, not a photograph. Your position is that the, is that so long as the, the, the, um, secretary of defense or his delegated, the person's properly delegated, have actually have looked at the material and, and, and made the determination, which is reflected by the certificate. Uh, it's not up to the court to, um, to second guess them as to whether, uh, whether they were correct with respect to the interests of the United States, the, the endangerment and so forth. That is correct. That is our position. Uh, and I think that the, the legislative history clearly shows that that was Congress's intent. I think the context of enacting this statute, responding to this court's decision, directing disclosure shows that that was Congress's intent to end litigation, to end judicial proceedings concerning these photographs. Um, and so when all these pieces together show that Congress did mean to leave it to the secretary of defense and to limit it, if there is to be a photograph within the time frame covering the subject matters that has been certified and, you know. Do you think that the statute required the transparency that, well, the, the level of disclosure that was made by the secretary, uh, in the last certification whereby the process was, was more detailed than, or identified with more detail than previously? No, we do not. We think the district court's first determination back in 2011, when all they had before him was the certification and, and he deferred to that. We think that was the correct ruling. And that's what should have happened with the subsequent two certifications as well. However, of course, now that the court has these additional details and just to clarify, they were not in the certification itself. They were in litigation. Yeah, I understand. But, um, I apologize. You're right about that. But, but now that of course the court has that, I think that the court can take comfort in the idea that the presumption of regularity has been clearly satisfied here, uh, that the department of defense engaged in a, in a thorough and, uh, and complete review of these photographs, document by document, making determination as to each one that they do in fact satisfy the statute. Well, and I certainly realized that we've said it previously that in the areas of national security, that, that we don't supplement our, our judgment with, for that of the, or that we're not, we're not quick to do so, uh, with regard to these, some of these matters. But are there any analogs, cause I didn't see any of this in, I was kind of wondering why it wasn't, didn't occur to someone, maybe it's just me. But there are other instances in the law where secretaries of various departments certify things with regard to, for example, the secretary of housing and urban development will certify that a community or a county is not appropriately using federal funds with regard to fair housing opportunities. This is the Westchester umbrellio that occurred, uh, two years ago. And the secretary certifies that they're not doing it. And there's a good deal of law that says that that certification is kind of the decision. I mean, I, I'm surprised that you didn't rely more on some of those things. I realized that you're dealing in an area where, where there's a traditional deference to the judgments made with regard to national security. But are, have you thought about other instances where secretarial certification is kind of given a different view of how it's reviewed by, by, uh, courts as opposed to just some kind of administrative process? Well, I, I, I now certainly wish that we had cited cases that were that deferential, but I do think we cited at least one outside the national security context. And I would point the court to the Morgan decision from the Supreme Court. Uh, and the, and the Supreme Court discusses there how, you know, the theory of the challengers in that case was that the court should review all the facts that went into the secretary's determination. And the Supreme Court says they're not going to do that, that that would, in their words, convert a contest before the secretary into a contest before the courts. Uh, and that because Congress had deemed this decision appropriate for the secretary to make, they would not engage in that level of review. Would the chairs indulge us? Could I ask one other? Presume you're wrong and that, that we were to say that this did fit within FOIA. What, what, what is your response? And what's, uh, what's the government's position, even if it does fit within FOIA, then what's the government's response? Uh, well, there are two things your honor might mean by fit within FOIA. One is that it might be an exemption three, that the PNSDA might be an exemption three statute. Correct. In our, uh, we would argue that the analysis is not that different in that case under this court's decision in Wilner and Michael's piano, uh, an exemption three inquiry is not really about examining the documents. It's more about just finding whether they fit within the statute. So the changes, the standard of review, perhaps from DeNovo from arbitrary and capricious, if you're looking for an APA kind of thing to DeNovo, but, but is that really of any real substance when you're with, when you juxtapose that to the deference that's due with regard to national security issues? I think, I think it's not an enormous difference. Uh, although it's called DeNovo review as interpreted, the term DeNovo in FOIA does imply a level of deference. And that's especially true in an exemption three case and especially true in a national security case. Uh, so, uh, ultimately the question either whether the PNSDA is regarded as a supersession of FOIA or an exemption from FOIA, ultimately the question is whether these documents fit within its terms, right? And they do, uh, because of the certification. So your backup to the backup is seven F and while this court made a ruling unfavorable to you on that, the Supreme Court jumped that ruling. And so that's still available. We agree that it is. And we believe that the, uh, DC circuits intervening decision, uh, the facts of that decision really show why their rule is superior and correct, uh, that the facts, I, I don't, I chafe when you say superior, I apologize for that. Their, their, their decision is correct in, in our view on that, on that particular issue. I think that again, just pointing to the facts of that case, you have a protocol for determining, uh, uh, for shutting down cellular networks to keep a bomb from being detonated. That bomb could be anywhere in the United States. It's the entire population of the United States. It's something that, that clearly should be exempt from FOIA. The DC circuit concluded that the seven F exemption does not require identifying an individual contrary to this court's ruling. And we think that that was the correct determination. You've reserved three minutes rebuttal. Thank you. Good afternoon. May it please the court. Lawrence S. Lusberg from Gibbons PC on behalf of the plaintiffs appellees, ACLU et al. This case is really about two things. It's about whether the executive branch has complied with the specific mandate of a, of a statute that was duly passed by Congress. And secondly, it's about whether in doing so, um, it now is immune from any review whatsoever by, uh, the judicial branch of the ACLU. Both of those fundamental principles are at stake here and all within the context of an even more fundamental principle, which has to do with the transparency of government, as that is voiced to us over and over through the Freedom of Information Act. Congress could undo FOIA in a blink of an eye. Absolutely. So when you talk about the importance of transparency and all of these treated as important, um, that really doesn't have anything to do with this because Congress decided that they were going to do away with it. They would do away with it. And the question is, did they in the PNSDA do away with a little tiny corner of it that seems to be of extraordinary importance to you? It is of extraordinary importance to me and many others. And, and, and that in the law, respectfully, Your Honor, with regard to that is very clear, which is that no matter how little of a corner it might be, there should be no implicit repeal of any aspect of FOIA in order. I'm not sure it's implicit. I mean, it's talking about protected documents and it says protected documents are not subject to disclosure under, under FOIA. And that renders it a classic exemption three type of statute. That is to say that the government has not pointed to. It might, but it, but it defines what is a protected document. And we know from old cases and very new cases as well, that you read a definition and that's what it is. The definition is in, uh, C2, it says it means any record for which the secretary has issued a certification. And that is a certain photograph taken during a period of time dealing with a certain subject. And you can see that everything here is, is a sub is a photograph taken in that period of time and that it deals with that subject. If it wasn't, you'd be, wouldn't be interested in it. So the only question is, has the secretary of defense issued a certification? And if, if, if he has, then by definition it's a protected document and then it's not subject to, um, it is not subject to disclosure under FOIA. So what am I missing? You're missing, respectfully, um, you're missing section D1 of the statute, which is, which says for, so what you read was you read from . . . I read the definition. You read the definition of protected document. And, but you, you missed the part where it said, where it says for which the secretary of defense has issued a certification as described in subsection D. Subsection D then goes on to talk about exactly the criteria that are, that the secretary must apply in order to make that determination. And this court, most respectfully, has no idea as it stands here today, whether the secretary did that. The definition only requires that he issued the certification that is described in D and it looks as though he has. There's no question that he has issued a certification. The question before the court is whether that certification must comply with the definition of certification in section D1 for any photograph, not all the photographs, but for any particular photograph described under subsection D, C1, I'm reading from the statute, the secretary of the secretary of defense shall issue a certification if the secretary of defense determines that disclosure, if he shall issue it, if he makes that determination. Correct. And, and so we know that he has made that determination. I mean, he has made the determination and if he has, he shall issue it. And if he issues it, then it's a protected document. And if it's a protected document, then by definition, it's not subject to disclosure under FOIA. Your Honor, the, I mean, it's kind of a tight box that you're in, but try and fight your way out of it. I don't think it's that hard to find my way out. And here's why, because of this court over and over and over and every other court has viewed judicial review as the sine qua non of the freedom of information act and of the freedom of information that is guaranteed us by that statute. We all understand that agencies left to their own devices are going to keep things secret. And so Congress said that, that not only shall there be judicial review, but that there shall be judicial review that is meaningful, that is de novo, that you'll take a look at it fresh. And this court has over and over done that and it's done that. And if I, if, you know, if you don't mind, let me in these words, Your Honor, it said that to support a claim of exemption, this is the, this court's language in Wilner. Oh, I'm sorry that I don't believe we're talking about an exemption here. Oh, respectfully. I think we are talking precisely. No, I understand you're, you're talking about an exemption, but this, if it's not subject to disclosure, it doesn't need an exemption, does it? Well, again, exemption three is all about this holistic view that just as then judge Scalia talked about in church of Scientology, which is FOIA allows the consideration of other statutes, which themselves create reasons why exceptions to disclosure, and that's exactly what this is. The PNSDA is nothing more or less than a classic exemption three statute, a so-called withholding statute. It gives the government the basis to withhold. And so it, it's, it's not adverse. Why does, why does the government have to withhold something that's not subject to disclosure? Because that is the structure of FOIA. And because the legislative history of the PNSDA. Nothing stops Congress from passing more laws. They seem to be doing it every day. It seems to me that you are, you are treating exemption three of FOIA as if it were the constitution that you are, your argument seems to be along the lines that, um, that if Congress wants to pass a new law that creates a new, a different set of, of obligations and considerations with respect to what gets disclosed or doesn't get disclosed, it must do it in conformity with exemption three. And, um, uh, I mean, Congress has the power to, to, to, uh, pass laws under which documents will not be disclosed. It is not constrained to conform them exactly to exemption three. Uh, if, if the new statute means that these things shouldn't be disclosed, um, uh, Congress is not constrained to write that statute in a manner that exactly with the, with the jurisprudence, the words or the jurisprudence, uh, preceded in respect to FOIA. I completely understand that Congress could expressly supersede FOIA. There is no question about that. That is, this is not a constitutional case in that regard. It, Congress could say FOIA does not apply here. That's not... It doesn't have to say FOIA does not apply. It can simply prescribe new standards. It can simply say, this will be the rule. And if your argument, if somebody comes and says, yes, but that doesn't comply with the structure that was previously established under FOIA, an answer would be, well, that was then, and this is now. Congress has now passed a new rule and FOIA isn't a constitution. FOIA doesn't prevail over subsequent enactments. The structure of FOIA, which Congress specifically said in passing this statute, it was not meant to disrupt. That was, there's not a lot of legislative history, but such legislative history as there is, as Senator Graham saying, this is not meant to undermine the entire structure of FOIA. And I can give you the exact quote, if you wish, it just doesn't change FOIA in its basic construct. That was the words of the legislative history that we've cited. And that is the legislative history that is before this court. That basic construct is straightforward, which is there's FOIA and FOIA has its exemptions. And then what, what exemption three does is it creates another set of exemptions, exemptions like this one, which apply if, and when another statute comes along that says some document may be withheld, that's what this did. And what the courts have said, including this court over and over, is that in order for it to be something more than that, to take FOIA completely out of play, that has to be very express. And respectfully, this is a classic, a classic exemption three statute, like many, many other exemption three statutes. If you look at the city of Chicago versus ATF case that had to do with, with another congressional enactment, like this one part of an appropriations bill that had to do with tracking weapons, those two are viewed as exemption three statutes. Well, suppose we view it as an exemption three statute, then it would, it would establish particular criteria for withholding or refer to particular types of matters to be withheld. Now, doesn't it set forth criteria for withholding? Yeah. It says, it says it's got to be taken at a particular, photos taken at a particular time and for, of a particular subject matter as to which the Secretary of Defense has issued a certification. Those are criteria. If any of those had not been met, well, it seems to me that under exemption three, a judge would be able to say, no, no, no, no, no, this, this document doesn't meet this, you see it's taken at a different period of time, or it deals with some other subject matter. I understand, Your Honor. And what this dispute comes to between us right now, between us and the government, um, throughout this matter has to do with whether the definition of when a certification may issue is appropriately a matter of judicial review. That's all that this case fundamentally is about. That is to say what, that, what you're, you, you read section C as the be-all and the end-all of the statute. We say, I'm, I'm, I'm reading exemption three, three, exemption three, which is B three, two, as saying that you have to look to see whether the statute is particular as to what it is it wants to exempt. And it seems to me once it has a definition and it says these four things have to be met, those are a criteria and they are particular types of matters to be withheld. So you could say that, uh, judicial review has to extend beyond that. Somebody else has to exercise knowledge of, uh, of, uh, of, of these risks. Your Honor, um, but it doesn't wash. Your Honor, the, the, the, the definition, you're, you're a hundred percent correct. This turns on that definition, whether under, as a matter of exemption three. And by the way, even as a matter of simply compliance with this statute, it depends on this definition and our argument and respectfully, I think it's correct, is that that definition includes D one because D one sets forth the specific criteria that is to govern the discretion that the, that the secretary of defense must exercise. The devil's in the, I mean, really where the rubber meets the road here is the devil's in the details. In the sense that in 2009, the Gates affidavit was sufficient as far as Hellerstein was concerned, right? Uh, he, he was now. Tell me, tell me what the difference between the Gates affidavit to the Gates certification was from the Panetta certification, which was no good. Um, um, two things. First of all, a lot of these arguments that have made in particular, the individualized consideration of each document, in this case, each photograph was not made back in, back in 2009. I was involved at that time. And I remember it was the same arguments were not made. So, so the second time around there was fuller argument, but leave that aside. This all comes about because it was judge Hellerstein's sense, having received the identical certification three years later, when the fact, when, when the, when the facts had, but the facts had changed and the facts had changed in importance of Islam hadn't changed. And the, the fact that it might inflame people because they reflect acts of abomination that might then be used as recruiting tools with regard to Al Qaeda or, or ISIS recruits for terrorist acts abroad or at home, that's no different. But Hellerstein seemed to think because we didn't have as many people in Iraq, that somehow he needed more. I, and I, that makes no sense to me. Um, well, one thing he said, this is the danger, this is judicial second guessing. Um, and, and this is what some of us are troubled with. Um, there's disclosure to you of a process and certainly the certification has to mean something. And that's one of the points you're trying to drive home. And I get that. That makes some sense to me. Certification has to be about something. There's a standard for the certification to occur. The question is how big do you dig to figure out the legitimacy of the certification? There's, and that's why I asked about other cases where secretaries of various departments certify particular facts or existence of circumstances, at least in the housing and urban development case. And, and, and certainly in national security, we give extraordinary deference to this, to the evaluations of the, of those in charge of enforcing laws or maintaining the national security. So the question is how, how much do we need to know to determine that the certification is legitimate? That that's really where the disagreement is, isn't it? Yes. And no, I completely agree that there has to be a tremendous amount of deference paid more in the national security context than in others. But as a general matter, there should be deference paid to the executive branch determinations here. Okay. This is about process. This case is about whether the specific documents document by document were considered by the secretary. We know they weren't. This has nothing to do with delegation because they, what was delegated was a process that if you read carefully, the underlying certification here was a process by which the documents were sorted and a sample created. That was the only people who looked at every document where people who are responsible for sorting and sampling, and we don't know how they did any of those things, but we do know that they did that. And we know that they did them to the satisfaction of the person who is required to make the certification. Well, we don't know whether the person who was responsible for making that certification had any idea what they did or didn't do, but we do because he certified it and he's taken an oath and he knows the law and, and we assume that he has the character not to betray his oath. Um, otherwise the government can't, can't function. None of us can function. Your honor, the, the government can functions as it does because when people make those determinations, judges like your honors look and say, did you obey the statute and the statute requires that in, in, in a statute couldn't be clear that there has to be individual consideration of, and you know, over and over, it talks about any photograph, whether that photograph would endanger citizens, there has to be individual consideration of the photographs. The secretary couldn't have been clear that he relied upon the recommendations of the generals and the joint, the chairman of the joint chiefs of staff who had not seen every photograph. We know that. We just looking at the, at the procedural history here, which is sprawling. We know that there came a time when the district court found that, um, that what the secretary had done measured up and, um, and then the next secretary renewed the certification. As I read the statute, it says the secretary of defense may issue a renewal of certification at any time. It doesn't say you start the whole process all over again. And when secretary Ashton did it, well, we started the whole process all over again. This is a 2018 secretary Mattis could certify it today, recertify it, and he'll have to do it by November, 2018. The case is becoming, um, uh, Groundhog Day that it never ends unless the documents are released to the public with whatever dangers ensue. This case will never end. It will, it will start a three year cycle of litigation after every certification. In other words, under your analysis, you can't lose. I disagree, Your Honor. I can lose. And here's how I can lose. Tell me.  And, and, and we've, and let's be clear, this roadmap that I'm going to give you about how we can lose is one that we've laid out for the government as well. So they know how to do this. The secretary or someone to whom he delegates the authority can look at each of the 2000 photographs or however many it is, we still to this day don't know. But there's some information in the congressional record that indicates it's something around 2000 photographs. That won't take very long. And the, and, and a person, and it doesn't have to be the secretary. He can delegate this authority and then rely on that can, can then say this one for this reason is it will provoke the danger to us citizens abroad and armed forces and employees, which is what the statute is about and can, and that process of looking at each one, what has never happened since, as far as we know, since forever, but this argument, as I said, was not made at the outset was that's anybody did anything other than a sampling based upon criteria that the court was not apprised of and the court should be apprised of it because sampling is the surrogate for individual analysis of photographs. Let me back up and tell you what I mean. Suppose there were hypothetically, suppose there were a hundred thousand photographs there could be, and you're saying there actually could be for all you know, and the secretary of defense with nothing else to do of any importance anyway, could just look at each one of them and spend a minute looking at each one of them and then afterward you'd be completely satisfied. No, no, Your Honor. He wouldn't have to, and he wouldn't have to do that because, and we've cite this authority in our papers, sampling is an appropriate surrogate for individual review. If a reviewing authority such as a court can look at it and say that was a legitimate sampling. So you keep, you keep assuming that the only part of the government that functions or has any expertise are the courts. I mean, I'm flattered, but the military is a profession. Is it not? Is it, is the military a profession? Of course. And, and, and, and, and, and I'm, and I'm urging deference to that, but there has to be, but in order for there to be deference, in order for this court or any court to provide the appropriate level of deference to the executive branch, the military or whomever, it has to know what they did. So for example, and, and so the, I believe in a, if a sampling process were created, if there were a hundred thousand documents that the judicial branch would, as it does in all of these FOIA cases would defer to a great extent to that sampling process. Maybe the, but, but they have to know what it is. It seems to me that, um, that you have, um, um, a reasonable answer to, um, Judge Jacob's argument about Groundhog Day, um, which is that, uh, Congress envisioned expressly that, um, that the, the question would come up again and again and again, and perhaps Congress envisioned that, um, as, as history advances, things change and the reasons for suppressing them from exposure might someday disappear, uh, as a result of the changes in the world. And they would no longer be any justifiable reason, uh, for, uh, disclosing them and that, uh, perhaps at such time, um, uh, one in your position would prevail in, in, in, in, in, in, in showing that, um, that, that the secretary perhaps had simply not made any new assessment, but had simply had simply, uh, uh, uh, by rote, uh, repeated prior assessments. So, I mean, we, we judges might not like having to see the same case every three years, uh, but, um, I mean, perhaps the remedy would be for Congress to say six years or 10 years, or, or, or perhaps we just have to hear the case, uh, when it's brought again, um, uh, I, I don't really see that, um, that the fact that the case comes back repeatedly to the court has much to do with it. But, but, but, uh, by the same token, uh, I don't see that that really helps your argument very much, except, except to rebut the proposition that, that we shouldn't have to see the same case again and again and again. Certainly Congress anticipated that the secretary would take a good fresh look at this every three years. And all I'm saying is that if the secretary the next time around were to engender the individualized review, that is specifically required by the statute. You have to look at the photographs or nobody needs to look at the photographs again and again and again, because once they've been looked at, they've been looked at and one knows what they are, but one can, but one has to assess them against new world circumstances. World, the photographs forever will remain showing the content of the world circumstances will change. And so once one knows what the photographs are, one knows what they are. One compares them to world circumstances and the secretary makes this determination. Now, if it turned out in a future time, if it turned out well, if it were the case now, or if it turned out to be the case later that the secretary, uh, just signed, kept year after year, three year after three years signing the same determination, which doesn't require a new look at thousands of photographs. It just requires comparing what you know about the photographs to new world circumstances. Uh, there might be a time when the secretary simply would not have done what the statute calls upon the secretary to do that might be. And I don't see, see that you've made an argument that the secretary here now has failed to do what the statute calls upon the secretary to do well. Well, yes and no. Let me answer that two ways. I think that your precise sense was what judge Hellerstein was feeling. I mean, what I think judge Hellerstein was feeling is that we're seeing the same certification time after time while world events change and he's not seeing. This one is not the same at all. I mean, various documents, photographs were, were said not to be covered. 198 photographs were said not to be covered. It's not the same certification. It certainly covers different photographs. It covers 198 fewer photographs. Why should the certification be, be changed? I mean, not, not that much time has passed and the, the circumstances of the world, uh, as they were when this all started are still very, very similar. And, and, and, and the fact that the secretary has used the same words and making the same certification. I mean, it makes a lot of sense that, that, that, that the same, the same considerations as motivated the secretary the first time are still true. I mean, we're, we're still, we're still involved in a war in Iraq. We're still involved in a war in all these places in Afghanistan and so forth. There's, there's, why would, I mean, give me a big reason why the secretary's appraisal of this should have changed. I don't know. And, and I'm not here to second guess. That doesn't mean that in 20 years it might not change. I'm not here to second guess the secretary's appraisal. That is not what, and, and I don't remember, maybe it was you, judge Jacobs said something about that. This isn't, should not be about second guessing or judge West. We, there should be no second guessing going on, but what we would, the court does have the right to request, not request to demand what it has the obligation to demand is that the statute be complied with and the statute and compliance, it has not been complied with because what we know is that the people who first recommended that as the generals and then decided that as the secretary did not consider every photograph individually. And I thought you said sampling would be fine. It would be if the sampling is itself subject to appropriate judicial review. So we don't know how that, and that's the easiest way to avoid the repetition of this every three years is to conclude that the PNSDA simply shuts down this peers intended on its face and that so long as the, and, and, and, and, and this is all not subject to FOIA at all, then we don't, then we don't have to have this every three years or five years or 20. You could do, you could rule that respectfully. That would be, and it would solve that problem. Well, and Congress could have solved that problem because what Congress could have done is it could have said there shall be no judicial review. Congress could have shed, could have said this supersedes FOIA. Instead, that's not what Congress did. What Congress did was two things. It demanded, it set forth a, a, a set of criteria that the secretary should consider in deciding, you know, whether something should fall under the statute. And it, it specifically by its language demanded that that be done on a document by document, in this case, photograph by photograph basis. And it did not say that this was apart from FOIA. It did not say, it may have been that Congress's intent was to react to this lawsuit, but what it did not do by its terms, it did not change the construct of FOIA it's by, that was what the legislative history is. This wouldn't change the construct of FOIA itself. Well, if it, if it says something is not subject to FOIA, it leaves FOIA intact. And, and that's the question is, did it say this is not subject to FOIA? The answer, our answer respectfully is that because FOIA creates exemption three, and now I'm repeating myself and I don't want to do that. Um, it, because that, that, that takes care of it. Um, thank you. I'm afraid we're wearing you out. So, uh, pardon me. Thank you. Thank you. We'll hear rebuttal. Thank you, Your Honor. Pardon me. A few brief points. Uh, subsection D one actually strengthens our argument. That's where Congress said that it's the secretary that gets to determine. I'm sorry. D one. You can raise the, you can raise the, um, sorry about that. No longer makes. Oh, there I got it. I got the funny noises out of it. I'm glad to achieve that. Uh, D one strengthens our argument. That's where Congress said that the secretary gets to make this determination. That's where the word determine is used in the statute. And that shows that Congress gave this decision to the secretary of defense. You don't contend, do you, that once the secretary has made this determination that it's made forever? No, this certification expires after three years. Expires after three years. So you don't have a problem with somebody coming back to the court after three years of the secretary and raising a new litigation of what it might be very easy for the court to decide. We think that should be decided under the standard of whether the terms of the statute were complied with that is whether the certification was issued. So that for example, if, if after one three year certification and another three year certification and another three year certification, if the secretary, uh, subsequent to that, uh, simply made the certification without having considered the question, um, but simply did it because it's got a memo from a subordinate. It's time for you to renew the certification. Oh yes. Okay. Well, give me something to sign. Um, that that would be impervious to challenge if the subordinate had had made this. Oh, nobody did anything. If nobody did any ordinance simply said, Mr. Secretary, it's time for you to renew the certification that was made by your predecessor three years ago. Uh, Oh yes. What's that all about? Nevermind. Here's the document. Just sign it. Right. Um, um, we would have a different case. You would have a different case. So you're not arguing that this case can't, can't properly come before the courts repeatedly. We are not arguing that that is correct. Uh, but, uh, we do think that in the circumstances now, the district court judgment wrongly inserted itself too much into this process. Uh, Mr. Lussberg relied on Judge Hellerstein's sense respectively. You're not arguing, are you, that circumstances in the world, circumstances that create dangers to national security can change so that things that, that were a danger to national security, like for example, the, the, the, um, uh, the plottings of the British in 1812, we're not, not, not worried about the British plotting is right now, uh, uh, undermining our national security. I'm personally not worried about that. Things do change and it would be up to the secretary to determine if under those circumstances. Some of us are still worried. Lawrence, have you inquired of the secretary of the defense as to the status of the certification process currently, which must be completed by November of this year? I have, uh, I have, I have told them that I will inquire shortly. So no, is the answer. I do not know the status of that. If the court were to look at the most recent declaration, it said that the process last time began about six months before the expiration, so that would bring us to May, assuming it takes the same amount of time, we would probably see that in a few months, but I don't know the current status. Well, it would be nice to know that it's not going to happen tomorrow, which might moot this case. Uh, I have no information that would lead that, that it would moot this case. I have no information. I believe that's true. You don't take the position, do you? That the, the language in D one precludes judicial review, do you? It's, I would say the statute as a whole. Without jurisdiction to hear this because of the enactment of Congress and creating the, uh, whether either an exemption or excluding it from FOIA. Well, we haven't made a jurisdictional argument. I think that the language as a whole shows. If we're not entitled to review the secretary's determination, I would suspect we don't have jurisdiction, do we? It's, it's just outside the scope of this court's proper review. There's no preclusion of judicial review in the statute, is there? There's nothing expressed about judicial review one way or the other, but we think that taken as a whole, it shows that as in Morgan, as in Egan, as in some other cases, uh, it shows that Congress left this decision to the secretary of defense. That's one thing, that's one thing, but as to whether that decision or, or some aspect of it might be reviewable is another, and that's what I'm asking. Right. But as in the case, you're right, that it was left to the secretary. The question is how much can someone, what can someone ask with regard to that and who do they ask it up? I take it. They ask it of a court. Then the question is how much can the court inquire as to that decision? And you say that the court should inquire not at all. In the cases I just mentioned, the court looked at the statute and the circumstances as a whole, and determined that Congress's decision to give the decision to the secretary, the relevant secretary in those cases, precluded judicial review beyond just the fact of somebody brought a lawsuit saying, um, saying that we made a FOIA demand for disclosure of something and the disclosure was refused on grounds that violate FOIA and we therefore ask the court to set aside the, the, the refusal to reveal the documents because it's contrary to FOIA, there's no doubt, is there, that that lawsuit would raise a federal question within the court's federal question jurisdiction, completely apart from what the standard would be for deciding whether the decision to withhold was one that the person, the official was entitled to or not entitled to, there would be any doubt, would there, that that would be a federal question case? I don't see any doubt about that. That sounds like a classic FOIA action. Classic federal question. And, and it would, it would clearly arise under federal law, namely FOIA. Yes. But that doesn't say anything about how much deference the federal court must give to the, um, to the decision made by the official. Correct. And, and the jurisdiction of this court would be exercised to review whether the PNSDA has been satisfied, namely whether the certification has been issued. Thank you. Thank you both.  Expertly argued. Uh, we will reserve decision. Thank you, Your Honor. Thank you, Your Honor.